775 P.2d 1109

**WALTER E. HELLER WESTERN, INC., a California corporation, Plaintiff–Appellant,**

v.

**ARIZONA DEPARTMENT OF REVENUE, Defendant–Appellee.**

No. 1 CA–CIV 8605.

Court of Appeals of Arizona, Division 1, Department B.

July 29, 1986.

Gust, Rosenfeld, Divelbess & Henderson by Richard A. Segal, Dale S. Zeitlin, Phoenix, for plaintiff-appellant.

Robert K. Corbin, Atty. Gen. by Gail H. Boyd, Asst. Atty. Gen., Phoenix, for defendant-appellee.

OPINION

KLEINSCHMIDT, Judge.

Walter E. Heller Western, Inc. appeals from a summary judgment entered against it in its suit challenging the Department of Revenue's calculation of Heller Western's income tax liability for the calendar years 1976 through 1979. Under the applicable tax regulation if a greater proportion of a taxpayer's income producing activity with regard to sales of intangible property occurs outside the state, such sales are deemed not to have occurred in Arizona and income from them is not allocated to Arizona in the sales factor component used in apportioning income in Arizona. The trial judge improperly ruled that Heller Western's activity in borrowing money outside of Arizona for loans made inside the state and certain administrative activities were not "income producing activity." We reverse and remand for further proceedings.

Heller Western is a California corporation qualified to do business in Arizona. It is a subsidiary of Walter E. Heller & Company, a Delaware corporation commercially domiciled in Illinois. Heller Western is en-

gaged in the business of making loans to commercial customers.

Heller Western's Arizona branch solicited new customers, examined books and records of potential Arizona borrowers to determine credit worthiness, negotiated Arizona loan contracts, and serviced Heller Western's Arizona customers. Heller Western's Los Angeles headquarters provided all funds the Arizona branch office loaned to its customers. The Los Angeles office obtained these funds by borrowing them from Heller Western's parent corporation in Illinois, paying interest on these and all other funds which it borrowed for other purposes at a blended interest rate set by the parent. Heller Western's Arizona branch played no part in procuring the funds for its lending operation. The funds Heller Western's Los Angeles headquarters borrowed from its parent were not earmarked for a particular Heller Western branch office or customer, but for accounting purposes, Heller Western allocated to the Arizona branch an interest expense on funds provided for Arizona loans presumably to determine the profitability of the Arizona branch. Heller Western's single largest business expense associated with loans made was the interest it paid to its parent corporation on the funds it used to make the loans. In addition to providing the funds for Arizona loans, Heller Western's Los Angeles headquarters approved credit for Arizona loans exceeding $1,000,000, monitored all advances and collections in Arizona, and maintained all financial records for each Arizona loan. In their briefs the parties devote most of their discussion to how interest expense, as opposed to administrative activity, bears on what is "income producing activity." For that reason we assume that the cost of Heller Western's administrative activity performed outside Arizona is negligible when compared with its interest expense.

During the taxable years in issue Heller Western was taxed as a corporation whose multistate activities made it impractical to segregate from its overall income and expenses those items of income and expense attributable directly to Arizona. Heller Western's Arizona income tax liability was thus calculated by a three-factor formula prescribed by former A.R.S. § 43-1141 (superseded by Ariz. Laws 1983, ch. 287 § 4, A.R.S. §§ 43-1131 through 43-1150), and former Arizona Compilation of Rules and Regulations R15-2-135-8 (now A.C.R.R. R15-2-1141). This formula is designed to reflect the scope of a multistate corporation's business activity within Arizona by dividing its in-state property by its total property holdings, dividing its total in-state payroll by its total payroll, and by dividing its sales within Arizona by its total sales. The three resulting fractions are averaged, resulting in a single fraction which, when multiplied by the corporation's entire apportionable income, determines how much of a corporation's income is subject to Arizona taxation.

The parties agree that the making of commercial loans and the receipt of interest thereon are equivalent to sales of other than tangible personal property within the meaning of the regulation. The sole issue is whether Walter Heller correctly computed its "sales factor" for the years in question. This turns upon the correct interpretation of the tax regulation A.C.R.R. R15-2-135-8(b)(5)(j)(i) and (ii) which defines when sales shall be taxed in Arizona. It reads:

(j) Sales other than sales of tangible personal property are in this State if:

(i) The income producing activity is performed in this State, [or]

(ii) The income producing activity is performed both in and outside this State and a greater proportion of the income producing activity is performed in this State than in any other state based on the costs of performance.

By granting summary judgment to the Department, the trial judge impliedly found as a matter of law that all of Heller Western's income producing activity with respect to its Arizona loans took place in Arizona; otherwise, there would have been a question of fact as to what proportion of the income producing activity was in-state and what was out-of-state, thereby making summary judgment improper.

The central issue in this appeal is what constitutes "income producing activity" under the relevant regulation. Heller Western maintains that the cost of procuring money from its parent is an income producing activity which is performed outside Arizona. The Department says that such cost cannot be considered.

We note initially that the Department is incorrect when it asserts that Heller Western must overcome a "heavy burden" to prevail on this appeal. The Department's argument presupposes that Heller Western is attempting to invalidate Arizona's apportionment formula or is claiming that the formula led to a grossly distorted result. *See, e.g., Moorman Manufacturing Co. v. Bair,* 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978); *Butler Brothers v. McColgan,* 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942). Such is not the case. Heller Western merely differs with the Department concerning the components of the apportionment formula under the particular facts of this case.

In support of their respective positions concerning what does and does not constitute "income producing activity," both parties rely on Multistate Tax Commission Apportionment Regulation IV.17, which provides in pertinent part:

(2) *Income Producing Activity; Defined.* The term 'income producing activity' applies to each separate item of income and means the transactions and activity directly engaged in by the taxpayer in the regular course of its trade or business for the ultimate purpose of obtaining gains or profit. Such activity does not include transactions and activities performed on behalf of the taxpayer, such as those conducted on its behalf by an independent contractor. Accordingly, income producing activity includes but is not limited to the following:

(A) The rendering of personal services by employees or the utilization of tangible and intangible property by the taxpayer in performing a service.

(B) The sale, rental, leasing, licensing or other use of real property.

(C) The rental, leasing, licensing or other use of tangible personal property.

(D) The sale, licensing or other use of intangible personal property.

The mere holding of intangible personal property is not, of itself, an income producing activity.

Heller Western contends that the activities of its Los Angeles headquarters office in borrowing money from the parent corporation in Illinois to supply the lending requirements of the Arizona branch office, together with the Los Angeles office's administrative functions, all constituted activities in which Heller Western directly engaged, in the regular course of its business, for the ultimate purpose of earning profits. Heller Western also argues that the borrowing and administrative activity of its Los Angeles headquarters office constituted more than the "mere holding of intangible personal property" within MTC Apportionment Regulation IV.17(2), and further notes that the definition of income producing activity in that regulation does not limit itself to the four examples in subparagraphs (A) through (D).

The Department's position is that only the activities of the Arizona branch office immediately result in the generation of income and therefore only those activities fall within the category of "[t]he sale, licensing or other use of intangible personal property" within the meaning of MTC Apportionment Regulation IV.17(2)(D), and that accordingly, only those activities qualify as "income producing activity." The Department also notes that the funds Heller Western borrows from its parent corporation are not specifically correlated with Arizona loan contracts, and argues that Heller Western's borrowing activity in its Los Angeles headquarters office is not the "direct" income producing activity contemplated by former A.C.R.R. R15–2–135–8(b)(5)(j) or MTC Apportionment Regulation IV.17.

The trial court's implicit holding that all Heller Western's income producing activity took place in Arizona was error. Regulation IV.17(2) expressly encompasses within the definition of "income producing activi-

ty" all activities and transactions directly engaged in for the ultimate purpose of obtaining gains or profit, regardless of whether the activities or transactions themselves directly or immediately yield income. The borrowing and administrative activities of Heller Western's Los Angeles headquarters office were as necessary to generating revenues from Arizona loans as were the customer contact activities of the Arizona branch office. The Department is incorrect in asserting that a commercial lender's interest expenditures, whether paid to a parent corporation or to some other source, are not "direct costs" of its lending business.

Cases from other jurisdictions indicate that income producing activity must include not only a business' direct customer dealings which ultimately realize income, but also those activities without which no income generating transaction would take place. *See Howard Cotton Co. v. Olsen,* 675 S.W.2d 154, 160 (Tenn.1984) (purchase of cotton by a broker for resale is an income producing activity even though income is directly generated only by final sale of cotton). *See also Montgomery Ward & Co. v. State Tax Commission,* 151 Kan. 159, 98 P.2d 143 (1940) (merely looking to state of sale when allocating taxable income fails to take into account out-of-state activities necessary to the sale.)

The Department claims the *Montgomery Ward* case is inapplicable because it predates the current regulations and deals with a different issue, that is, whether separate accounting rather than apportionment was proper. We disagree. The principle behind *Montgomery Ward,* that out-of-state activity necessary to produce an in-state sale should not be ignored, is neither contradicted nor altered by the present regulations. Furthermore, the Department mischaracterizes the issue in *Montgomery Ward.* The issue in that case was not the *method* of taxation but the *allocation of income* to a particular state. In this case, the issue is not whether the method of taxation, the three factor formula, applies, but what activities can be considered in arriving at the numerator of the Arizona sales factor.

The Department's reliance on *Communications Satellite Corp. v. Franchise Tax Board,* 156 Cal.App.3d 726, 203 Cal.Rptr. 779 (1984), *app. dis'm,* 469 U.S. 1201, 105 S.Ct. 1158, 84 L.Ed.2d 311 (1985), is misplaced. In that case, the taxpayer operated a ground station in California which relayed and received communications through satellites. Part of the taxpayer's income came from leasing "half-circuits," or rights to send or receive specific communications to and from the California ground station and the satellite in question. The taxpayer also had income from its ownership interest in the corporation which owned the satellite itself. The Court held that the taxpayer's sales numerator should include both the leasing of the half-circuits and income from the taxpayer's indirect ownership of the satellite itself. The Court ruled that the income producing activity with regard to the satellites took place in California, since that is where the satellites were controlled and that is where the leasing of the half-circuits took place. The Department contends that *Communications Satellite* stands for the proposition that the income producing activity is that which directly generates revenue. While this is true, it does not advance the Department's case. Nothing in *Communications Satellite* indicates that only activity which directly generates revenue is income producing. In fact, *Communications Satellite* supports Heller Western's position because in that case the Court looked to where and how the satellites were controlled, not just where the leases were executed.

The Department also argues that because the original borrower of the funds loaned by Heller Western to its customers was Heller Western's parent corporation, the borrowing was not in fact engaged in by Heller Western and thus cannot constitute income producing activity on Heller Western's part. We disagree. It is undisputed that Heller Western obtained the funds for its commercial lending activities by borrowing them at a set rate of interest from its parent corporation. That the parent corporation borrowed those funds from

other sources has no bearing on the issues in this case.

Finally, the Department argues that accepting Heller Western's interpretation of the applicable regulations causes a flagrant subversion of the three factor formula because it drastically undervalues Heller Western's activities in Arizona. We note that such is the case. This problem may have been alleviated by A.R.S. § 43–1148 and A.C.R.R. R15–2–1141(b)(5)(b), enacted too late to apply here, which permit a recomputation of tax liability when the three factor formula causes a skewed result.

Because the income producing activity with regard to Heller Western's interest income on loans executed in Arizona took place both inside and outside Arizona, a question of fact remains as to whether a greater proportion of those activities took place in Arizona as opposed to any other state based on cost of performance. Therefore, the trial court's order of summary judgment is reversed and this case remanded for further proceedings.

SHELLEY and HAIRE, JJ., concur.